## WILLIAM KELLER *v.* WILLIAM LOFLIN.

In presenting an appeal to the District Court from the decision of the Register of the State Land Office, under the Act of the Legislature of 1853, it is not necessary there should be an order of appeal made and an appeal bond filed.

The Register after granting a certificate of entry upon the location of a warrant, has the power to determine whether such location has not been made in violation of a settlement right.

The Acts of 1853 and 1857, which give an appeal from the decision of the Register of the State Land Office, require that the appellant should make a special assignment of errors upon which he relies for a reversal of the decision.

APPEAL from the District Court of the parish of Carroll, *Farrar*, J.
*Short & Parham, Sparrow* and *Montgomery*, for plaintiff. *L. Selby*, for defendant.

BUCHANAN, J. The Acts of 1852, page 168, section 3d, and of 1853, page 22, section 1, gave to the Register of the State Land Office jurisdiction to decide between conflicting claims of preference right to enter lands in the State Land Office.

The Act of 1853, also gave the right to the claimant aggrieved by the decision of the Register to appeal from the same, within six months, to the District Court of the parish in which the land is situated.

In conformity to those statutes the Register of the State Land Office took cognizance of a dispute between the parties to this suit, in relation to the right to enter the S. E. quarter of section No. 2, township 20, range 11 east, of the district of public lands in Louisiana north of Red River, and rendered a decision upon the same, after hearing evidence on both sides, on the 2d February, 1857 : which decision was in favor of *William Loflin*.

24

On the 11th March, 1857, *William Keller* presented to the Register a written application for an appeal from said decision, to the Tenth District Court for the parish of Carroll, in which parish the land in controversy is situated.

The law did not require an order of the Register upon the petition for appeal. The 2d section of the Act of 1853, p. 23, provides, that "as soon as an application for an appeal is made to the Register, it shall be his duty to deliver to the party applying for such appeal a certified transcript of all the proceedings had in his office relative to the conflicting claims."

Neither did the law require the party appealing to file with the Register an appeal bond. The 2d section proceeds to enact, that the party appealing, to whom the Register shall have delivered a transcript as abovesaid, "shall forthwith file the same in the office of the Clerk of the parish in which the land is situated, and give bond, as in ordinary cases, as security for costs." The expressions in the French text of the section are "et fournira le cautionnement ordinaire pour le paiement des frais." It is proved that the appellant on filing the transcript from the Register in the District Court, procured to be endorsed, on the accompanying petition, which he presented in conformity with the 3d section of the statute, an obligation for the security of the costs, subscribed by one *Ingram*, which the Clerk of court testifies is the usual mode of securing costs in his court. We consider this a compliance with the statute.

The plaintiff, in his petition presented to the District Court, has set forth the following alleged errors of the Register of the State Land Office:

1st. That after the certificate of entry had issued to *William Keller* on the 19th January, 1856, the Register had no right to institute proceedings to have the same cancelled.

2d. That no application for a preference right of entry had been filed in the State Land Office, or marked as filed or received in the office within the time prescribed by law to secure a preference entry under the State preëmption laws.

3d. The Register erred in not taking parol proof to establish the fact, that *Loflin* had parted with all his rights to enter the said land, if any he had, prior to the time of making proof of settlement on the said quarter section.

4th. The proof laid before the Register fully establishing the fact, that *Loflin* had parted with all his rights to enter the said quarter, he erred in not confirming the certificate of entry which had been issued to *William Keller*.

5th. The Register erred in supposing that it was a title to land that he was investigating and not a right to enter land depending upon facts, the proof of which must necessarily be by parol, as all conflicting rights prior to the existence of a title out of the government may be established by parol testimony.

I. On the first error assigned. The first section of an Act to provide for the sale of swamp lands granted by Congress to this State, approved 17th March, 1852, (Session Acts, p. 167,) provides, that "the Register of the Land Office, and Treasurer of the State as receiver of public moneys, are hereby authorized to sell warrants for one million acres of land, to be located on the swamp or overflowed lands donated by Act of Congress of 2d March, 1849, and 28th of September, 1850, said warrants to be issued for not more than six hundred and forty, nor less that forty acres, according to the laws regulating the surveys and legal subdivisions of sections adopted by the United States; provided, the

same shall not be sold for less than one dollar and twenty-five cents per acre; and provided, further, that no warrant shall be issued until the expiration of three months after the passage of this Act."

" Section 2d. Be it further enacted, That every white person being the head of a family, or over twenty-one years of age, who has made a settlement on any part of said lands previous to the passage of this Act shall have the privilege of entering not less than forty, nor more than three hundred and twenty acres of the same, at the office of the State Land Office at Baton Rouge, at the minimum price of one dollar and twenty-five cents per acre ; provided, that application and payment thereof be made before the expiration of twelve months after the passage of this Act; and provided, further, that the party thus applying' for a preference right shall make oath before some officer of the State qualified to administer the same, that he or she had settled on the land applied for, with the view and purpose of cultivating the same, and not for the purpose of speculation, and shall state as near as may be the date of such settlement, which oath as to the location and settlement, shall be sustained by the affidavit of two disinterested witnesses."

" Section 3. Be it further enacted, That all conflicting claims of preference rights to any of said lands, shall be decided by the Register, who shall adjudge the same to the person first locating or settling thereon."

Various Acts subsequently passed—1853, March 16th, and April 28th, Session Acts, p. 35 & 156 ; and 1855, March 15th, Session Acts, p. 260—have extended the time for actual settlers to make application, proof and payment, to secure a preference right upon the State lands.

Under these statutes, it is obvious that locations of warrants must be very apt to come in collision with settlement rights; and there is nothing in the law which precludes the Register from interfering, after a certificate of entry upon the location of a warrant, to determine whether such location has not been made in violation of a settlement right. On the contrary, it seems most likely that a conflict could only arise between those two classes of claims after an entry made by the purchaser of a warrant.

II. The application of *William Loflin* for a right of preëmption is proved to have been made, in the manner required by the Acts above quoted, in the month of February, 1854, which was less than twelve months after the passage of the Act of 1853, March 16th, (Session Acts, p. 35,) and was consequently within the time prescribed by law to secure a preference entry under the State preëmption laws.

It has been argued in this court by one of the counsel for plaintiff, that there is no proof *William Loflin made payment* for the land within the delay prescribed by those laws.

But we agree with the counsel of defendant that we cannot reverse the Register's decision for an error not assigned in the pleadings.

The Acts of 1853 and 1857, which give an appeal from the decisions of the Register of the State Land Office in these matters to the District and Supreme Courts, both require that the appellant should make a special assignment of errors, upon which he relies for a reversal of the decision, in his petition to the District Court. He must be confined to the errors assigned. And in this case he only complains that there was no proof of an application by *Loflin* under the statutes—and not that there was no proof of payment by *Loflin.*

III, IV and V. These three grounds of error may be considered together.

*Keller* did not pretend to make his entry upon a preëmption right growing out of actual settlement upon the land, but upon the location of a warrant purchased from the Land Office. His entry was not made until June 19th, 1856. But in the month of September following, searches made among the archives of the State Land Office having discovered that the proof of an actual settlement of the same land entered by *Keller* had been filed by *William Loflin* as far back as February, 1854, the Register of the State Land Office notified *Keller* that his entry must be cancelled, as having been issued in error, unless *Keller* should prove a superior right to *Loflin*, by evidence to be taken before a Justice of the Peace of Carroll parish, contradictorily with *Loflin*. Whereupon a great many witnesses were examined on both sides, whose testimony was reduced to writing and laid before the Register. One of the witnesses examined for *Keller* was *William L. Knox.* It was attempted to be shown by this witness that *Loflin* had sold his settlement right upon the land in question to him (*Knox*) early in the year 1853, and that *Knox* had subsequently sold it to *Keller.*

The Register disregarded the testimony of *Knox*, because a title to land cannot be proved by parol. In the District Court a bill of exceptions was reserved to *Knox's* testimony, not only upon this ground, but also because he is an interested witness, as vendor of *Keller*, by his own statement.

We do not think it necessary to determine at this time whether a sale of the preëmption right of an actual settler upon State lands, can be proved by parol ; being convinced that the objection to the witness on the score of interest, was well taken, and that he was clearly inadmissible without a release at least. We are not even prepared to say, that a written release by plaintiff would have removed the objection to his liability under the circumstances.

Apart from *Knox's* testimony, there is nothing in the record showing an assignment of *Loflin's* settlement right to *Keller.*

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed ; and proceeding to give such judgment as should have been rendered by the District Court, it is further decreed that the certificate of entry No. 362, dated 19th June, 1856, in the name of *William Keller*, of the south east quarter of section 2, township 20, range 11 east, district of lands north of Red River, be cancelled, and that plaintiff pay costs in both courts.